Shotwell v. Delaware Department of Safety and Homeland Security Good morning, Mr. Bensing. Good morning, Your Honors. May it please the Court, Dwayne Bensing, Legal Director of the ACLU of Delaware, on behalf of Plaintiff Appellant Mark Shotwell. With me at the council table is Jared Silbergleid, our legal fellow, and I would like to reserve two minutes for rebuttal.  Just over nine years ago, almost to the day, Mr. Shotwell had the entirety of his home and the data universe ransacked by defendants, Delaware State Police officers. The very narrow issue before this Court is whether, as a matter of law, pro se plaintiff, Mr. Shotwell, sufficiently alleged that the warrants relied upon by the defendants were unconstitutional general warrants authorizing the exploratory rummaging of his home. Well, before we get into the merits of the argument, can you address the jurisdictional issue that we raised in advance as to the unnamed defendants? Do they remain in the case? They do not, Your Honor. The parties agree on this point, that the case has been entirely dismissed. All parties have been dismissed. All claims have been dismissed time and again. So there's no dispute there. And so on kind of the housekeeping issues of jurisdictional issue, the case has been finally resolved. And where, as a technical matter, where do we find that dismissal? Your Honor is correct that as a technical matter, it's less than clear. And I think that our briefing made it even a little more ambiguous in our line about the unidentified defendants remaining in the case at the motion to dismiss stage. But defendants are exactly correct that Judge Bevis, sitting by designation when he got the case from Judge Andrews, said the only two claims remaining were those against those named defendants and those claims precisely. But for the avoidance of all doubt, to the extent those defendants might otherwise remain in the case, do you withdraw any claims against them? Correct, Your Honor. There are no remaining claims against unidentified defendants. If this case were to be reversed and remanded, the remaining claim is really against Sergeant Taylor and the overbroad unreasonable warrant and the general warrant at issue with Sergeant Taylor. Thank you. And just to button this up again, there was never any service on the unnamed defendants, was there? Correct, Your Honor. And the cases that the court alerted the parties to in advance to this argument are precisely on point. The unidentified defendants were never named at any point, never noticed at all. And so we're certainly dropped out of the case avoidance of any doubt. So you're raising with us an argument that these are general warrants. The case law makes a distinction between general warrants and overbroad warrants. Why should we consider it where we have a warrant that identifies particular things to be seized, at least by category? Why is that a general warrant as opposed to an overbreadth? Well, Your Honor, this court has adopted that even when categories are identified, that a warrant can be transformed into a general warrant when it is far too broad and beyond the scope. So even if this court is reluctant to adopt the idea that this is a general warrant, we believe it should say that these warrants were general warrants. But even if it doesn't, then there was not sufficient probable cause for each of the particular items that have been identified in that warrant. The reason that we believe that the warrants were transformed into general warrants is because when you look at the warrants themselves, it identifies so many items that leave to the discretion of the executing officers that there really are no bounds even within the categories. When you look at, for the contempt warrant, for example, any and all knives, swords, similar edged weapons, anything similar that could be used as a deadly weapon, that authorizes the officers to search in the butter knife drawer and the pizza cutter drawer of the kitchen. So really what we're allowing here is the full discretion for the officers executing the warrant to search every nook and cranny of Mr. Shotwell's home. I don't want to get to the probable cause yet, but the deadly weapons seems particular and the kinds of deadly weapons that are identified seems to be particular. That those deadly weapons seem to be a natural consequence of the fact that they're searching for a knife, right? I mean, I don't know how that then turns this into a general warrant. The search itself also must have some perimeters around it, Your Honor. And so I agree with you that these issues can be a collapse of the probable cause and whether it transforms in the general warrant. But here, the strict boundaries were not set in place sufficiently to withstand the Fourth Amendment scrutiny. I think the data warrant, the data and devices warrant, is even more indicative of this, because as the Supreme Court recognized in Riley, what we have on our personal cell phone devices is so expansive, the entire personal information of an individual can be contained on a cell phone device. These files, just as the court ruled in the Stabile case, that identifying all files would be overly broad and transform a warrant into a general warrant. Certainly all the data on a cell phone would transform a warrant for the data and devices into a general warrant. There's a distinction to be drawn between a warrant for those electronic devices and for the search of those devices. Are you conflating those in the arguments that you're raising as to this warrant, which on its face seems to authorize the seizure of the, for these, in the context of a search for these electronic devices? That's right, Your Honor. There is a distinction between the search of and the search for the devices. Unfortunately, at the district court level, Mr. Shotwell was never able to proceed with what the distinction was there. And of course, defendants have put forth a separate data warrant that was issued three days afterward. So that's a question of fact that has been left unresolved at the district court level. Mr. Shotwell sufficiently alleged, however, that the entire search of the entire universe of his data had been unconstitutionally pursued by the executing warrant officers. Even in the deposition testimony, they copied the entire data universe of all of the cell phones without any restrictions due to time period or anything like that. Again, that's just the seizure. Obviously the data warrant complicates things. And the way in which this was reviewed is something separate. But your challenge is just to the particularity of the D&D warrant, which, again, does seem to identify the items to be seized. It doesn't control how it is that they were then actually going to be searched, right? Your Honor, I think that that question offers a distinction with the Stabile case. Again, I'm probably not pronouncing that correctly. I'm sorry. Where a court wants to search every file in Stabile impermissibly transforms a limited search into a general one. That's precisely the argument of Plaintiff Shotwell today. But I thought you just agreed that the warrant before us authorizes a search for these devices and a search of the devices that we've been presented somewhat belatedly with the possible existence of a data warrant. But that a separate warrant would be what would authorize a search of those devices. That's right. And that claim could not. The argument here is that for purposes of a motion to dismiss, Mr. Shotwell sufficiently alleged that there was a search of the devices beyond the search, the seizure of the devices. So you're right, Your Honor, those are two separate issues. We don't yet have the factual record developed sufficiently for Mr. Shotwell to have proceeded with either of those issues of whether the seizure of those devices itself necessitated. We don't know what happened within those three days between the data warrant and the devices warrant. So on this search of point, I think your friend on the other side says just let's take judicial notice of it. Something along those lines. What do you say to that? Did your client know about the data warrant? I mean, judicial notice usually is kind of like, you know, this is the address at the corner of these two intersections. Is this something that at the time your client made the allegations in the most recent pleading, however it's numbered, was that something your client knew of? Client knew of this data warrant and still said, yeah, you know, I've got problems. Or is this something that's not as well known as maybe your friend said? Your Honor, I can say for myself, I didn't know of the data warrant until the defendant's brief alerting us of the data warrant. And so the idea, what's important for purposes of this appeal is that the district court was not aware of the data warrant. The data warrant was certainly within the custody and control of the defendants at the trial court level. They could have offered it as a judicial awareness at that point as well. They did for the Judge Andrews on the motion to dismiss did take judicial notice of the devices warrant and the contempt warrant did not take judicial notice of the data warrant. So it wasn't even considered at the district court level. We can argue the merits of the data warrant and whether it was unreasonable and did not have sufficient probable cause. I think there are great arguments there, but that's not properly before this court because it wasn't even acknowledged by the district court. Do you agree that if we read the D&D warrant as limited to a search for the electronic devices that it is then not a general warrant? Your Honor, it is more narrow at that point. I don't think that on this record what Mr. Shotwell had alleged before the district court was that Sergeant Taylor conducted an unlawful search on July 3rd pursuant to general warrants. The complaint alleges the general warrants were overly broad in scope and unjustly used to blanket plaintiffs entire digital universe. So the allegation that Mr. Shotwell, and that's the quote from Judge Andrews on the motion to dismiss, the allegation that Mr. Shotwell brought forth prior to the dismissal was that these were general warrants and they blanketed the entire digital universe. So that's a question that we don't have answers yet to because the district court declined to let that argument move forward to determine whether the data warrant corrected whether that data search was overly broad, unreasonable or a general warrant. Does your general warrant argument turn on whether or not the affidavit is incorporated? No, Your Honor. Well, and first the affidavit is not incorporated. And I think that that's pretty clear in third circuit case law as well. It must be explicitly related. But even if the affidavit was incorporated, when you look at what paragraph 7, the incorporation there, what would matter to keep it from being a general warrant would be that we'd have to particularly identify the items to be searched and seized. That's not what occurred here. If you look at paragraph 7, it just goes to why they believe that some people in some places use these searches to to conduct terroristic threats against other officers. That's not sufficient probable cause for the nexus to exist between the criminal activity and the broad sweeping search of Mr. Shotwell's data and devices and entire home for weapons. So, no, even with incorporation of the affidavit, which again we argue should not be incorporated, the affidavit does not correct for the fact that it's a general warrant. The D&D warrant uses the language searching for searching the above named person, house, conveyance, place, etc. specified in the annexed affidavit. Why isn't that language sufficient under Johnson? Because the affixed affidavit does not specify. So it doesn't help supplement what items are to be seized by the executing warrant officers. Is it sufficient for incorporation? I think that just like in Tracy here, the particularity requirement has to inform the subject here. So the in order for the affidavit to be incorporated, the warrant had to clearly and expressly incorporate it. That line there is similar to the affidavit that was not incorporated in Tracy. And so the subject of the search, the lawful authority of the executing officer, it needs to limit the power of the search. The affidavit, paragraph 7, does not do any limiting exercise and therefore is not sufficiently incorporated. That's the key there. Let's add 10 minutes to counsel's time. Thank you. Just on the data warrant, 1983 claims you've got to have individual personal involvement, personal responsibility for the actions. And so we're kind of in this weird space where you didn't know about the data warrant. So it's harder to say, hey, who executed the warrant? Who worked on the warrant that you didn't even know about? So a little bit of an imbalance. But at another level, what are the allegations that there was a degree of kind of personal involvement with the use of the data warrant and the kind of, as we're calling it, the search of kind of components? So Mr. Shotwell, for purposes on the motion to dismiss, sufficiently alleged that Sergeant Taylor was the one who had authorized the warrant for all of the data and devices and all of the weapons under the contempt order. And so Sergeant Taylor is the individual that had been identified that the court dismissed at the motion to dismiss stage. And that's what must be reversed and remanded. Because as Your Honor correctly points out, the record here had not yet been sufficiently completed. The allegations, however, were sufficient to move forward to determine whether the data search had been was reasonable under the scope of the Fourth Amendment. Who would be any defendant remaining as to an alleged unlawful search of the devices? Sergeant Taylor, Your Honor. Sergeant Taylor is where the allegation that Judge Andrews dismissed the allegation of the unreasonable search against Sergeant Taylor for the warrants at issue here. He's the one that affixed the affidavits and sought the unreasonable searches. Is it sufficient to have authorized the seeking of the warrants, authorized the searches? Or does the defendant, after the opportunity for discovery, need to be the officer who allegedly performed the searches? That's precisely a question for the district court and at the district court level. Because this claim could not proceed, Mr. Shotwell denied the opportunity to determine who the individual officers were. In his deposition testimony of 2022, Mr. Shotwell still says in his deposition that he does not know who searched what at that point. It gets a little weird, though, right? Because we started with the understanding that we have appellate jurisdiction because there's no unnamed defendants in the case. If there's unnamed defendants in the case and they're still alive and those claims could still be brought, then we don't have appellate jurisdiction. So it feels a little weird in the sense of, no, they're out of the case, but send it back and they may be back in. And so it feels a little weird at one level to say we can take appellate review, but now we want to add, when we get back down, the people who aren't part of the case that gave us appellate review. I mean, it might be just an oddity of appellate review and finality principles, but it does feel that we're in best shape when we can say, hey, that's final and that's never coming in. But it really does feel to me a little bit like there's a shot that if we keep this open or remand this from war use on the data warrant, unnamed defendants are coming in. That's true, Your Honor. Absolutely. And Mr. Shotwell deserves his day in court. Sorry, you've conceded that it's final. You've conceded that the unnamed defendants were dismissed. That's right, Your Honor. So we have a final order before us. And as to the opportunity to identify who the proper person was, that would have been a single interrogatory, wouldn't it? As a pro se plaintiff, Mr. Shotwell surely made mistakes that I as a counsel may not have made. So I can't take the time machine back and advise him on which interrogatories to send. I think he did the best he could with what he had. But really on the motion to dismiss standard, this claim didn't even proceed past that initial dismissal by Judge Andrews. We're in the footnote. Footnote three is really where this all comes down to where Judge Andrews concedes that the warrant could have been drafted more carefully, could have been more clear, but nonetheless dismissed that claim. So I don't think it's fair for Mr. Shotwell to be the victim of the dismissal where the court has closed the door to that claim moving forward anymore. The second guessing of Mr. Shotwell's ability to add additional named defendants after the claim has been dismissed really is counterfactual to the timeline of Mr. Shotwell's case. The district court time and again dismissed his claim that the warrants were general and that the search was unreasonable because it lacked probable cause. The district court did not entertain that. And even when Judge Bibas was sitting by designation, he said that the courts already rule on that. It's preserved for appeal. So the problem that Judge Phipps raises about, oh, well, if we reverse and remand on the Sergeant Taylor claim, these other folks might come in. That's always true. Sergeant Taylor, just like the unidentified officers, was dismissed. If this court reverses and remands on that claim, Sergeant Taylor is back in for the district court to determine whether Mr. Shotwell has sufficiently alleged that a violation of his Fourth Amendment rights have occurred. So the unidentified officers are at the same risk of coming back in as Sergeant Taylor is on appeal. That's the entire purpose of reserving on appeal this issue. Just to tease this out practically, it feels that this reading of the rule, this kind of, you know, the rule is designed to prevent piecemeal appellate litigation. I mean, that's just that, you know, time and time again, the cases say that's what we're doing with this rule. And it feels that, you know, people could begin to take advantage of that by saying, oh, you know what, I just want to appeal this one part of it. I'm going to dismiss everybody else, take my one ruling up, drop all the other claims, take my one, get a big win, now I want everybody else back in. And so it feels that, you know, you point out there's reasons that pro se litigants don't always develop a record and do these things. And maybe your point is strong to say that's a motion to dismiss as opposed to having the opportunity of discovery to do that stuff. But at another level, like, isn't this just kind of, once they're out, they're out, and it feels weird to let them come back in when they're out and no one's saying that they should come back in directly on this appeal. No one's challenging that part of the ruling. I think the district court is best situated to determine whether any of these issues allow, permit, or disallow these unidentified officers to come back in at a later point. The district court really, because of the dismissal, the improper dismissal on the face of what the district court was considering, the allegations that Mr. Shotwell had, and the judicial notice of the broad warrants themselves, on its face, at the motion to dismiss stage, the district court should have permitted that claim to move forward to determine precisely these issues. Because the court dismissed that issue, you're right, we're left in this query of nine years later, who did what when and who looked at what? We still don't know, but that is because the district court improperly dismissed that claim nine years ago, or in the initial motion to dismiss. So Mr. Shotwell could not have appealed any earlier the motion to dismiss because this court would not have had appellate jurisdiction at that point. So it seems, I don't know what Mr. Shotwell was to do to have his day in court on the issue of the unreasonable search in violation of the Fourth Amendment. This was the only avenue left open. It's not gamesmanship, particularly with a pro se plaintiff who says, hey, listen, my entire house was ransacked. My entire digital universe was seized. I believe that they have looked at it several times and I want that to stop. Where is there any allegation that Sergeant Taylor conducted the search of the devices? Yes, Your Honor. In fact, Judge Bevis opened the opportunity on unidentified officers and Taylor and Biddle were explicitly dismissed. The motion is brought on behalf of all named defendants. In that footnote, Taylor and Biddle were explicitly dismissed by Judge Andrews. But then Judge Bevis said I'm trying to find the exact quote. I apologize. If you have in the report the information about who searched what or what was done in the course of the searching, that's at Supplemental Appendix 27. Judge Bevis opened the door again for Mr. Shotwell to say who searched what or what was done. Mr. Shotwell, in his supplemental letter brief, said the investigators' names appear at least ten times, Matt Taylor, whose name appears at least six times, Jeffrey Biddle, whose name appears at least four times. So Mr. Shotwell, in his attempt in the supplemental briefing, and that's in the letter brief August 5th of 2024, said, listen, these folks did look at my stuff. This is why I want to get it in. In response, the court, of course, said, I've already decided on this issue. That claim has been dismissed. So it wasn't sufficient for Judge Bevis at that point. That's what the violation is that we're appealing at this point. Okay. Thank you. We'll hear from you in rebuttal. Good morning, Your Honors. May it please the Court, Julia Mayer from the Delaware Department of Justice on behalf of the affilees. Good morning. Good morning. Your Honors, in this case, affilees defendants are asking the court to affirm the ruling from 2019 from Judge Andrews, determining that the warrants at issue in this case were not general warrants. Although they authorized the seizure of a broad scope of documents, phones, electronic devices, things of that nature, the case law tells us that those items are particularized. In the cases regarding general warrants, the deciding factor into why something is a general warrant is because it gives an officer unfettered discretion. Examples of that can be seen in warrants where an officer is given free reign to search for items such as documents relating to the Communist Party of Texas, illegal movies, things like that. When we're in the world of technology and we have these devices with so much sensitive data on them, where we have a search like this for electronic devices, any and all, and a laundry list of every kind of electronic device that follows, why isn't that, as in Cal, a general warrant? That's a good question, Your Honor. So the context of this case is that Mr. Shotwell made a threat against a police officer and his family on Facebook. Presumably that is done via an electronic device. At the time the officers were applying, at the time Sergeant Taylor applied for the warrant, he didn't know if he had done it on a phone, an iPad, a laptop computer, a desktop computer. Television? That's a good question. With respect to the smart TVs in the warrant, the capability of connecting to the Internet, many televisions have the ability to download apps, things of that nature, connect to YouTube, connect to the Internet, connect to various websites. To the extent that the smart TV is the issue here, that would be, from defendant's perspective, a part of the warrant to be excised, showing overbreadth versus the issue of it being a general warrant. Defendant's position is, of course, though, that the warrant is not overbroad, but to the extent that this court did find that portions of it work, believe that the appropriate remedy would be at the stage that this was at, the motion to suppress stage, to excise that specific portion in a prosecution to prevent the state from using that sort of evidence on its case sheet. Why isn't the proper remedy damages for a violation of the Fourth Amendment? So, Your Honor, in this case, Mr. Shotwell has alleged damages as well as reputational harm as part of his complaint. At this stage of the proceedings, if we are to look at the state district court record, defendants submit that even though the names of persons like Sergeant Taylor or Detective Gaddy appear on extraction reports, there is no evidence in the record saying specifically, you know, this DSP officer on this date went into this file and then this was in violation of the Fourth Amendment. But we're talking now about even items seized, and you make the point correctly that if we were in the world of a suppression motion, and, you know, as it turned out, the particular item wasn't seized, that we wouldn't suppress other things where there was probable cause. But this is a 1983 action for damages, which would cover even nominal damages. So to the extent that we have the government conceding that there is overbreath to this warrant, why isn't that per se a Fourth Amendment violation and a basis for vacating and remanding, not for the search of the electronic device, but for the search for a particular kind of device for which there was not probable cause? Yes, Your Honor. So to take that in two parts, to be clear, the government does not concede that the search was overbroad. Perhaps to not say that with exact clarity, but to the extent that this court were to find that the search, let's say, for the smart TV was overbroad, it still does not warrant reversal here. As a practical matter, separate from this, we do know from looking at the docket sheets that a motion for return of property was filed. It appears that that motion was denied as moot, which could suggest that Mr. Shotwell received his property back. But turning to, importantly, the issue of, let's say, the court were to find that a portion of the device's warrant was overbroad and that, for example, the TV was seized and that was unlawful. That's not the end of the analysis. The issue, regrettably and admittedly, was not in the briefing before this court, but was raised in the court below. But that would go to the qualified immunity analysis. Regarding, if I could just have a moment, please. The qualified immunity is not before us. That's correct, Your Honor. And you've clarified that you're not conceding overbroad here. What about in the contempt warrant? Let's assume there's probable cause for the search and seizure of firearms, given the threat that was made to the Uber driver and the reference to possessing guns. But this warrant also includes knives and edged weapons that could be used as a deadly weapon. Where is there probable cause to search for all knives found in the house? Your Honor, pursuant to Delaware law, a person who is in possession of deadly weapons in 11 Del C. Section 222, in a subpart, that definition does include all knives except for a pocket knife in a folded position. But where is there probable cause to believe that a knife or a sword or a similar bladed item would be found in the house? So with probable cause being a totality of the circumstances analysis, at this point in time that Sergeant Taylor had applied for and obtained the warrant from the magistrate, Mr. Shotwell had already violated the terms of his PFA by transferring a firearm to his mother, as opposed to relinquishing that to the defendant. Again, this warrant specifies other things to be searched for and seized. Where is there probable cause for those items? Your Honor, the government would submit that at this stage in time, it's because he had already violated the terms of the PFA by possessing a deadly weapon in contravention of the statute. He had already shown that he had possessed a firearm, which is also included in the definition of a deadly weapon. But the rub is, and maybe I'm just picking up on the theme that Judge Krause is coming at you with, is I get it that there is a notion that he might have firearms. And the affidavit has references to firearms. There's reasons to think he does have firearms. So if the officer weren't stopped at firearms, that's one thing. But then it goes on to talk about swords and knives. And so, you know, maybe if he made posts about swords and knives, you'd have a case for swords and knives. But just because a person's dangerous, maybe, it seems that you're kind of just saying, hey, look, they're dangerous, so we want all things. And, you know, that might go too far, don't you think? I mean, is there anything in any of the supporting materials that suggest that there could be probable cause for sword or knife? Or is there just a broader principle that once you think there's guns, you get everything else? So admittedly, the threats below that were posted on Facebook and the issue with the Uber driver and the suggestion that he and his companion had guns, we'll say, and the issue with transferring the firearm to the mother as opposed to relinquishing it to the Delaware State Police, you are correct that all involves firearms here. Admittedly, yes, you are correct that the issue of knives, swords, things like that do not appear within any of the other documents within the affidavit of probable cause or any of the charging documents that we've seen as part of the record in this case. However, to the extent that the issue such with the televisions or here with the knives, swords, things like that is the issue, if we were to look at the 92,000 case, the remedy would not be remanding it and per se finding even nominal damages for Mr. Shotwell. The remedy is that the issue, to the extent that the court finds overbred, is that it would be cured by redaction, that is, striking from the warrant. There's several phrases and clauses that are invalid for a lack of probable cause. Your response, that strikes me as kind of a response in the context of criminal law, not necessarily a response in the context of civil law, because the search has already been done. I thought the direction, maybe I shouldn't have, but my intuition was the direction that you might go at least with the knives and swords issue was that it's harmless. That was my question. I don't, I'm trying to understand what the difference is between a search for a firearm and a search for a knife, since you're essentially searching the same places. I understand a little bit more of the argument between a television and a phone, but once, let's assume there's probable cause for the firearms, where are they searching for the firearms that they're not also searching for a sword, which is likely to be equal to, if not a larger object? That's correct, Your Honor. So with the principles of search and seizure, pursuant to a valid search warrant, police are authorized to search anywhere within the home or in containers that could, the item could be found in here. So if, let's say, for example, we're looking for a small personal firearm, as you would ask Mr. Bensing, could that not also be found in the kitchen in the same place that a knife could be found? Well, doesn't this warrant also authorize the search for any and all photos depicting any of these aforementioned items? Yes, Your Honor. So that would go to evidence of Mr. Shotwell possessing those items in contravention of the protection from the disorder. To the extent that that includes things like photographs of knives and swords, that would seem to open up the ability to search envelopes, drawers, go through papers. Those aren't the same places that you would find a firearm, right? In theory, if a specific envelope is smaller than what could fit a firearm or a deadly weapon within the meaning of that, the definition found in the Delaware Code. So why don't we have an overbreath problem? Again, we're not in the realm of criminal law and suppression. This is where his Fourth Amendment rights violated because there wasn't any probable cause for the items that are designated in the warrant. Why isn't that the case here? So to take a step back, Your Honor, from the perspective of the state at that time is trying to build a case against Mr. Shotwell, potentially for violation of the PFA. Evidence supporting that violation could be found in a photograph of him holding a firearm for the period of time in which he is prohibited by law from possessing a firearm. In addition to finding the actual firearm within his property at his home. Can we talk a little bit about the notion of this data warrant that kind of now shows up? I think your friend on the other side basically says, wait, it's not judicially noticeable. I don't even know about it. It's a little odd to take judicial notice of something. Judicial notice, I think, is like the house at such and such street. That's the address of this house. Or these two streets intersect. Was there a warrant issued that the person who it was issued for doesn't even know about? It puts us in a little bit of a spot if we're even going to do that on a motion to dismiss. So I guess my thinking is the claim is, gee, the search of the devices was wrong. You now say, guess what? No, the search of, we had a warrant for that. But it was kicked out very early. So at one level, where are we? Shouldn't that kind of get vacated and remanded to then say, okay, we'll now entertain claims regarding search of devices. Why isn't that the right thing to do with this new data warrant? And work with me, assuming that judicial notice is maybe off the table. Just assume it's off the table. Other people might think it's on the table. My panelists might think it's on the table. But I think it's not. Let's add also up to 10 minutes for the government's time. Thank you. Yes, Your Honor. So as a preliminary matter, the warrant should have been provided. I can't say for certain why it wasn't. But I agree with you that it should have been provided. I will say that when I came on this case at the appellate stage, reviewing the record, it occurred to me that it appeared something was missing here. My own background in criminal law told me that and is what led me to start searching the Superior Court record to see if something else was there. And once I found it, immediately provided it to Mr. Bensing and ethically felt must provide this to the court because it could change the universe in which we're operating. With respect to the question of, you know, Judge Andrews was not presented with this warrant below. Judge Bevis was not presented with this warrant below. Why not remand the case? In effect, the government's position is that if we are to remand the case for briefing, discovery or argument, let's say on that issue, the same argument, the same principles as argued in the brief would apply regarding the collateral estoppel. From the government's perspective, even if we were to remand this case down and for further consideration on the issue itself, we believe that applying the principles of collateral estoppel in the court below should find that the claim is barred. I mean, that makes, you might have a good collateral estoppel argument, but we almost never entertain collateral estoppel affirmative defenses, A, in response to a Rule 12b6 motion. That's a little dicey in its own right. But B, we almost never do it in reviewing. I don't know of a single case where we've done it in reviewing the dismissal of a 12b6 motion on appeal. I mean, a district judge would be already a little leery of saying, hey, you know what I'm going to do? I'm going to bounce something on collateral. I'm going to do a motion to dismiss on collateral estoppel. They almost always kind of convert that to summary judgment, give people an opportunity to do things. But in a sense, what I'm hearing you saying is, no, let's look at collateral estoppel for the first time in appeal in response to a 12b6 motion. That might feel, you know, two standard deviations at least outside what we normally do. I know everybody wants to win the appeal, right? But just isn't the right thing to do to just say, hey, look, we'll send this back. You know, that part of the 12b6 motion, at least the data warrant shouldn't have been granted. This is what we've got. Go at it. You know, you've got the warrant now. You can talk about discovery. You can talk about collateral estoppel. Just do that kind of uninhibited at one level by the appellate record. Make your own record again. Isn't that kind of a play usually when something gets prematurely kicked out is you say, yeah, we aren't saying there's no merit to collateral estoppel or anything else about the legitimacy, the merit of the warrant or the data warrant or its support. Just, you know, get a day in court. Sort it out there. I understand your point, Your Honor. You know, I acknowledge that this is a bit of an unusual issue to come up at this stage of the proceedings. It caught me by surprise and appears caught all parties by surprise here. And by no means I'm trying to say that, you know, it's no big deal that the state did not provide this below. It absolutely should have been provided. Understanding, you know, your argument and reasoned argument that this is unusual to be happening at the appellate stage. The response to that is, of course, yes, that is it is unusual and not done all that often. The response to that argument would be that, you know, the argument for collateral estoppel is clear cut, given that we have the briefing that shows the exact issue below being raised and then denied in the superior court. And then also the case law, for example, in the Ross case cited in the briefing that says, you know, we're not going to consider an issue for the first time on appeal unless there's a compelling circumstances. There's been talks about, you know, an issue of first impression, which, you know, we're not arguing that's the case here because... But this whole notion, you know, the general standard that we cite is you can affirm for any basis in the record. And that gives the appellate courts some freedom. But here's their stuff that's not even in the district court record. And so our biggest aperture, our biggest opening for kind of, you know, just saying, hey, you know, we aren't going to stir up the ruling because it looks right. I don't even know that these facts fit into that window. What do you say? I mean, it seems that we need stuff beyond the record. And that's really tough when the maximum extent we have is to affirm for any basis in the record. Did Mr. Shotwell have the doubt award? So, Your Honor, I cannot state for certain whether he did or not. I will say if we are to look at the Superior Court record, it was attached to the motion to dismiss that was filed by his public defender at that level. Now, in the initial disclosures file in this case, which I believe is at docket item 61, I may just have a second to pull this up, please. Mr. Shotwell stated plaintiff possesses a copy of the discovery material that was provided to him by a state appointed legal counsel in the criminal trial that subsequently followed July 3rd, 2016 arrest. This includes copies of legal filings pertaining to the criminal case. And as we know, throughout this litigation, Mr. Shotwell did produce to the state large amounts of his criminal discovery. But I can't say 100% for certain whether Ms. Van Amerongen provided him with a copy of it. But we do know that it was attached to a motion that was filed on his behalf in the Superior Court. And he has represented that he has the criminal discovery from the Superior Court, which under Delaware rule of criminal procedure 16 would have been provided by the state. Collateral estoppel is an affirmative defense, right? Yes, Your Honor. And it would need to be raised in an answer. Yes. The government didn't file an answer in this case, right? Yes, Your Honor. So it wasn't the district court record. How is it any part of the record before us either? How is it something that we can even consider? And while we spent some time talking about it, we have before us a document you've asked us to take judicial notice of that is missing multiple pages, that does not come with any kind of certificate of authenticity or anything to indicate that it's an authentic document. And you're asking us not to take judicial notice of the fact of it, but of the truth of its contents. How could we possibly do that as a matter of judicial notice with these various pages that you've submitted on appeal? Yes, Your Honor. I will say the issue of what was provided by the Proconotary's office encompasses the totality of what they have in their criminal files provided to me by the clerk in New Castle County. So what was provided to Your Honor is the extent of what remains in the superior court record below. If I may have a moment to double check, but I believe that there is a stamp on it from Ms. Norris's position at the New Castle County Proconotary's office, but I would need to confirm that within the binder for me. So admittedly, that does raise a good point of yes, this was not presented below and understanding that the standard here is you can affirm for any reason in the record below. Much of the government's argument going to that was in the interest of judicial economy. This case has been going on now for nine years or seven years, sorry, seven years at this point. And Mr. Shotwell was afforded the opportunity to conduct full discovery in this case, given the opportunity to develop the record as to who it is exactly that searched his devices. Multiple extensions from the court. Court told him at multiple points, you know, if you just notice a deposition will extend the deadlines for you there. So from that perspective, Mr. Shotwell did have a full opportunity to develop the record as to who, in fact, is the person that actually, if anyone searched his devices. However, independent of this issue that is concerning to the court, there is ample reason within the record itself to affirm Judge Andrews decision. So understanding, of course, now in twenty twenty five with a fully developed, more fully developed record. And of course, this issue of the data warrant that appears was unknown until I found it this past winter. Judge Andrews decision is based on what was before him as the universe existed in nineteen. And there is ample evidence within the record that Judge Andrews decision regarding the central issue of this case about whether the warrants presented to him were general warrants was correctly decided as as briefed by the parties. I thought the gravamen of the complaint was twofold. One, there was no warrant for the search of my items. And two, there was an unconstitutional search of my home because it was overbroad or lacking particularity. The second question has been the subject of most of our conversation. The first seems answered by the presence of the data warrant. And so what is your understanding of what would happen if this was remanded to go back and look at what is now here? Acknowledging, as I think you have done appropriately, that somehow this was missed perhaps because it was attached at least in one trial court proceeding. So it's not clear that it was really missed. But having filled out the record as you have, what what will now happen if there were to be a remand on this new, I guess, new allegation or maybe a construction of the existing complaint? Tell me how you see this moving if it were to be remanded. Yes, Your Honor. Were this matter to be remanded to the district court, defendants would proceed with arguing the issue of qualified immunity, which was briefed below and raised in the first motion to dismiss, second motion to dismiss, as well as the summary judgment briefing. The first motion to dismiss decision and the summary judgment decision did not reach the issue of qualified immunity. At the second motion to dismiss stage, the court declined to address the topic because the factual record had not yet been developed and they determined it was best to let discovery take its course. From defendants perspective, were this to come back down now, discovery has taken its course in this case. And Mr. Shotwell has had a full and ample opportunity to discover the names of the people he alleges searched his devices and to fully develop that record. I will note for Your Honor that, of course, Mr. Shotwell was a pro se party below and pro se litigants are held to a more lenient standard than a trained barred attorney. However, it is also important to note, though, that in the specific factual record of this case, Mr. Shotwell has demonstrated himself to be a sophisticated, highly intelligent litigant. I will note for Your Honors in docket item 65, which was a memorandum opinion denying a motion for appointment of counsel. The district court went through the full factors of the tapering case found at 6 F third 147. We're looking potentially forward, not backward. Yes, sir. And if there was a remand to reopen the record for the government to introduce things, then surely you'd agree that that would pertain to Mr. Shotwell as well, right? Yes, Your Honor. And now Mr. Shotwell does have counsel, although I wouldn't presume necessarily whether counsel would continue to represent him on remand. But but they may. So that may portend some some different directions that this would take if it were returned on remand. Right. Yes, Your Honor. The government's position would be that would this case be remanded? It would need discovery, need not be reopened and that the court could proceed on the briefing regarding the issues of qualified immunity, which has been raised below. Additionally, the issue of collateral estoppel would be briefed. I will give you just a few seconds to wrap up. Thank you, Your Honor. The government acknowledges that this case has taken a bit of an unusual procedural history here through the nine years since the search and the seven years of litigation through multiple counsel, multiple courts and before multiple members of the bench. However, at the end of the day, the narrow question before the court is whether the decision that Judge Andrews made in 2019 when he held that the warrants before him were general warrants were not general warrants was correct. If we were to apply the precedent from the circuit and to look at the face of the warrants before the court, as argued in the briefs, these are not general warrants. And for that reason alone is basis to affirm the record beneath and the finality of this case. Thank you. Thank you, Your Honor. Judge Phipps, I think your question to opposing counsel is exactly right on the point here that there's so many undeveloped facts on the record below that this court has before us that it's improper. We must remand and reverse. We must reverse and remand so that the district court can clarify the record. No offense, Judge Mady, but I think it's irrelevant on the appeal whether Mr. Shotwell knew of the data warrant. It's what the district court had before it. Judge Andrews did not have the data warrant before him. Defense counsel had the opportunity to present the data warrant to the district court below and never did so. So on that record. But arguably so did Mr. Shotwell. I hear your I hear your point, but I don't want to I don't think it's irrelevant if he had both knowledge and the opportunity to present. It's not irrelevant to Judge Andrews or the district court below. It is irrelevant on appeal before this court today. It's not on the record below. And as Judge Phipps said, you are limited to the record. And so the record was not sufficiently developed on that point. So, you know, it's interesting here because, you know, I don't see much in the record on that point, but I also see these lingering that might be an understatement, but I also see these lingering kind of qualified immunity arguments that were presented and not ruled on. And so when we want to look at the record and we want to look at what's available to us on appeal, it is a little unusual for a court of appeals to reach out and say, hey, no one's considered this argument beforehand. At the same time, qualified immunity is a big deal. It's immunity from suit, not just immunity from damages. And so, you know, do you think there is I think I mean, it might not be a good use of discretion, but I think technically there's the availability of this court to reach qualified immunity if qualified immunity provides an alternative basis for affirming the rulings below. That's I think you agree with me technically. And I'd like to hear you on discretion. You know, it might be technically an option, but I'd like to hear your advocacy on, you know, don't do it or, you know, you don't. Yeah. I mean, Your Honor, I think that on the point taken, I think technically I think that that may be true. It would be extremely improper here. Mr. Shotwell would need the opportunity to develop that had been established law. We have the Stabile case in 2014. We have the 2002 Riley case in 2000, Supreme Court case in 2014, even firmly established law that these types of general warrants for data that overreach so broadly were unconstitutional. So I think Mr. Shotwell may have had a very good argument on qualified immunity, not in the record before. I think it would be far overreach for this court on such a limited record to rule on qualified immunity at this time. Point taken that it was raised, but better point taken that it wasn't fully briefed by the parties. And so it's not right for this court to decide at this time. And on the point of what was my time has been, I don't want to turn the Fourth Amendment protections on their head. Judge Mady's question about, well, can't knives be stored in the same place as guns? And so guns gets you there. That really turns the Fourth Amendment protections on their head. The same place exception allows any warrant for any item to swallow those Fourth Amendment protections. As Judge Krause showed us, the warrant said photos. We're looking at family photo albums, a picture. Tell me how that I'm sorry. How does that turn? It's on its head. Are you suggesting that the authority, the particular authority to search for the firearm for which I understand you're saying there's no probable cause, but let's assume there is for a moment. How does how is that not allowing for you to search where there may be firearms stored? Your Honor, the Supreme Court has explained that the framers adopted the Fourth Amendment to ensure the specific evil of general warrants, authorizing a, quote, exploratory rummaging of a person's belongings. If Mr. Shotwell owned a locket with a picture inside of it, the warrant would have authorized them to search a locket. Surely a locket did not include a sword or a gun. And they had no reasonable suspicion that a locket photo would demonstrate that there was a nexus between any criminal activity and the general warrant. And we hold to that. And we think that the stable case holds that as well, that when you are so broad as these warrants were drafted, that it transforms that warrant into a general warrant, even if there are categories that are included. I take it part of your answer is that even if you would be searching in some of the same places, we have a warrant that authorizes not just the search, but also the seizure for the items listed. And you're arguing that there's not a probable cause for that seizure, even if they would come across them otherwise. That's right, Your Honor. And exploratory rummaging is really what's at issue here. And that was my point about it swallowing the rule there. Again, and Judge Krause, I just want to underscore the point earlier about personal liability extending to Sergeant Taylor, not only for the search, whether or not there was search, there was some questions of fact there, but obtaining a general warrant in the first place would allow Mr. Shotwell to raise the 1983 claim there. For the reasons we've discussed thoroughly, thank you, Your Honors. We ask that this Court reverse and remand the decision. Thank you. We thank both counsel for a very helpful argument today.